UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-23378-CIV-MARTINEZ/SANCHEZ

CONSORCIO KORALIA DOMINICANA,

    Plaintiff,

v.

PROGROUP INTERNATIONAL CORP.,
ALAN AZPURUA (a/k/a ALEJANDRO
AZPURUA), and CARMEN AZPURUA
(a/k/aCARMEN URDANETA),

    Defendants.
_____/

**REPORT AND RECOMMENDATION ON PLAINTIFF'S
MOTION FOR ENTRY OF FINAL DEFAULT JUDGMENT**

This matter is before the Court on Plaintiff Consorcio Koralia Dominicana's ("Plaintiff" or "Koralia") Renewed Motion for the Entry of a Clerk's Final Default Judgment against Defendants Progroup International Corp. ("Progroup"), Alan Azpurua (a/k/a Alejandro Azpurua) ("Azpurua"), and Carmen Azpurua (a/k/a Carmen Urdaneta) ("Urdaneta") (collectively "Defendants"). ECF No. 24.[1] Here, Defendants did not properly respond to the operative Amended Complaint (ECF No. 11), *see infra* note 4, and Defendants did not file a response to either Plaintiff's motion for the Clerk's entry of default (ECF No. 13) or the instant Renewed Motion for the Entry of a Clerk's Final Default Judgment, and the deadlines to do so have long passed. After careful consideration of Plaintiff's filings, the record, and the applicable law, and the undersigned being otherwise fully advised in the premises, the undersigned **RESPECTFULLY RECOMMENDS** that Plaintiff's

---

[1] The Honorable Jose E. Martinez, United States District Judge, referred the motion to the undersigned to "take all necessary and proper action as required by law." ECF No. 25.

1

Renewed Motion for the Entry of a Clerk's Final Default Judgment, ECF No. 24, be **GRANTED IN PART** and **DENIED IN PART**.

## I.     BACKGROUND[2]

In early 2022, the government of the Dominican Republic (the "Government") awarded Koralia a contract to supply medical equipment to newly constructed hospitals in the country (the "Government Contract"). ECF No. 11 at ¶ 15. To fulfill its obligations under the Government Contract, Koralia placed an order with Defendants on March 22, 2022, for the purchase and delivery of an array of medical equipment (the "Agreement"). *Id.* at ¶ 17; *see* ECF No. 11-1 at 1-2 (copy of the Agreement); *see also* ECF No. 11-1 at 3-29 (invoice). Under the Agreement, Defendants were to procure, deliver, and install the medical equipment in exchange for a total payment of $463,987.50 USD. ECF No. 11. at ¶ 19; *see* ECF No. 11-1 at 2. Defendants were aware of Koralia's Government Contract and assured Koralia that they could fulfill the equipment orders within the time frame required under the Government Contract. ECF No. 11 at ¶ 26. Koralia only agreed to the terms of the Agreement because of Defendants' assurances. *Id.* at ¶ 27. Koralia complied with the negotiated terms of the Agreement and tendered the full payment of $463,987.50 to Progroup as consideration for the procurement and delivery of the medical equipment to the Dominican Republic. *Id.* at ¶ 21; *see* ECF No. 11-1 at 3-29 (itemized invoice). Ultimately, Defendants fulfilled only part of Progroup's obligations under the Agreement, failing to deliver $214,797.00 of medical equipment for which Koralia had already paid. ECF No. 11 at ¶ 28; *see* ECF No. 11-3 (invoice/statement corresponding to undelivered equipment). Consequently, Koralia had to fulfill its Government Contract by purchasing the medical equipment

---

[2] The following facts are deemed admitted by virtue of the Defendants' default. *See Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987).

that Progroup had failed to deliver from another source. ECF No. 11 at ¶ 29. Despite Koralia's repeated demands, Progroup failed to refund $214,797.00 that Koralia had paid for medical equipment that was never delivered to Koralia. *Id.* at ¶ 30.

Accordingly, Koralia initiated this case on September 1, 2023. ECF No. 1. On November 13, 2023, Koralia filed an Amended Complaint against Defendants seeking damages for breach of contract (Count I), conversion (Count II), unjust enrichment (Count III), civil theft (Count IV), and "Action to Pierce the Corporate Veil" (Count V). ECF No. 11. The Amended Complaint alleges that Defendants breached the Agreement and owe Koralia $214,797.00 for undelivered medical equipment, along with interest, attorney's fees, and costs.[3] *Id.* at ¶¶ 28, 35-37.

Defendants were served with the Amended Complaint on November 13, 2023, ECF No. 11, but never properly answered the Amended Complaint or otherwise properly appeared in the case. When Koralia sought a clerk's default against Defendants, *see* ECF No. 13, the Court ordered the Clerk to enter a default against the Defendants, ECF No. 15. The Clerk then entered a default against the Defendants on January 25, 2024. ECF No. 16. The Court thereafter entered an Order on Final Default Judgment Procedure, ordering Defendants to "file an answer or other response" to the Amended Complaint and "file a motion to set aside the Clerk's Default that shows good cause for Defendants' failure to timely respond" to the Amended Complaint by February 15, 2024. ECF No. 18. Defendants failed to comply with that Order.[4] Thereafter, Koralia filed the instant

---

[3] Koralia also seeks treble damages for civil theft pursuant to Fla. Stat. § 772.11. ECF No. 11 at ¶ 73; ECF No. 24 at ¶ 20. However, as discussed *infra*, *see* Section III(B), Koralia is not entitled to default judgment on its civil theft claim, and as a result, treble damages are not warranted.

[4] Although Defendant Azpurua did file a *pro se* Motion to Vacate Clerk of Court Entry of Default Against Individual Defendants (ECF No. 17) and a purported Response/Answer to the Amended Complaint (ECF No. 19), asserting that those filings were being made on his and Defendant Urdaneta's behalf, Judge Martinez struck both filings for failure to follow the Court's Order on Final Default Judgment Procedures (ECF No. 18), concluding that "Mr. Azpurua's pleading did not admit, deny, or respond to the allegations set forth in the Amended Complaint and did not set

3

motion seeking final default judgment against Defendants. Defendants did not respond.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 55 contains a two-step process by which a party may obtain a final default judgment. Fed. R. Civ. P. 55. For any defendant that fails to plead or otherwise defend against a lawsuit, the Clerk may enter a clerk's default. Fed. R. Civ. P. 55(a). Thereafter, "[p]ursuant to Federal Rule of Civil Procedure 55(b)(2), the Court is authorized to enter a final judgment of default against a party who has failed to plead in response to a complaint." *Chanel, Inc. v. Sea Hero*, 234 F. Supp. 3d 1255, 1258 (S.D. Fla. 2016).

A clerk's entry of default, however, does not automatically entitle a plaintiff to a default judgment. *See, e.g.*, *Cohan v. Baby Marathon, LLC*, No. 20-60185-CIV, 2020 WL 6731041, at *1 (S.D. Fla. Oct. 27, 2020) (explaining that a motion for default judgment "is not granted as a matter of right"), *report and recommendation adopted*, 2020 WL 6729393 (S.D. Fla. Nov. 16, 2020). While it is true that a defendant who defaults admits the well-pleaded allegations of fact in the complaint, a defaulting defendant does not admit any facts that are pleaded insufficiently or are mere conclusions of law. *Id.*; *see also, e.g.*, *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975); *De Lotta v. Dezenzo's Italian Rest., Inc.*, No. 6:08-CV-2033-Orl-22KRS, 2009 WL 4349806, at *5 (M.D. Fla. Nov. 24, 2009) (explaining that the pleading standard set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "is equally applicable to a motion for default judgment"). Accordingly, an admission of the allegations in the complaint, by itself, may or may not be sufficient to grant default judgment. *See Descent v. Kolitsidas*, 396 F. Supp. 2d 1315, 1316 (M.D. Fla. 2005) ("[T]he defendants' default notwithstanding, the plaintiff is entitled

---

forth any Affirmative Defenses." ECF No. 22 at 1. Judge Martinez nonetheless gave all parties an additional opportunity to comply with the Court's Order on Final Default Judgment Procedures, ECF No. 22 at 2, but Defendants filed nothing more with the Court.

to a default judgment only if the complaint states a claim for relief."); *see also Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015).

To adequately state a claim for relief, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P 8(a)(2). If the admitted facts are sufficient to establish liability, then the Court must ascertain the appropriate amount of damages. *Nishimatsu Constr. Co.*, 515 F.2d at 1206. Monetary damages can be awarded on default without a hearing when "the amount claimed is a liquidated sum or one capable of mathematical calculation." *Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538, 1543 (11th Cir. 1985).

### III.     LIABILITY

Plaintiff's Amended Complaint asserts claims for breach of contract (Count I), conversion (Count II), unjust enrichment (Count III), civil theft (Count IV), and "Action to Pierce the Corporate Veil" (Count V). ECF No. 11 at ¶¶ 35-88.

### A. **Breach of Contract (Count I)**

Under Florida law,[5] a claim for breach of contract requires a plaintiff to establish "(1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the

---

[5] In this case, Plaintiff, a Dominican corporation, has asserted that its "causes of action accrued in the State of Florida," ECF No. 11 ¶ 7, and that Florida law governs, *see, e.g.*, ECF No. 11 at ¶¶ 34, 60, 71 (alleging Defendants violated Florida law). Defendants have not appeared and disputed that Florida law governs, and the undersigned will therefore apply Florida law to the claims asserted in this action. *See Tarmac Am., LLC v. Pro Way Paving Sys., LLC*, No. 8:12-CV-867-T-33, 2014 WL 1930499, at *3 & n.1 (M.D. Fla. May 14, 2014) (applying Florida law to breach of contract claim when plaintiff contended that Florida law applied and defendant had defaulted); *see also Sun Life Assurance Co. v. Imperial Premium Fin., LLC*, 904 F.3d 1197, 1208 (11th Cir. 2018) ("Under our precedents, a party waives its opportunity to rely on non-forum law where it fails to timely provide . . . the sources of non-forum law on which it seeks to rely."); *Pycsa Panama, S.A., v. Tensar Earth Techs., Inc.*, 625 F. Supp. 2d 1198, 1252 (S.D. Fla. 2008) ("Absent proof that foreign law differs from that of Florida, the Court is entitled to presume it is the same."), *aff'd*, 329 F. App'x 257 (11th Cir. 2009).

breach." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009) (citing *Friedman v. N.Y. Life Ins. Co.*, 985 So.2d 56, 58 (Fla. 4th DCA 2008)). Additionally, the plaintiff must establish that it has fulfilled its own obligations under the contract. *See Ryder Truck Rental, Inc. v. Logistics Res. Sols., Inc.*, No. 21-21573-CIV, 2022 WL 2348642, at *18 (S.D. Fla. May 26, 2022).

Each of these requirements is met in this case because the Amended Complaint alleges that Plaintiff negotiated with Defendants and entered into the Agreement, in which Progroup agreed to sell and deliver an array of medical equipment to Plaintiff in exchange for the payment of $463,987.50. ECF No. 11 at ¶¶ 17-19; ECF No. 11-1. Progroup breached that contract by failing to deliver all of the medical equipment that was the subject of the Agreement and for which Plaintiff had paid, and Plaintiff suffered damages in the amount $214,797.00 in undelivered medical equipment. ECF No. 11 at ¶¶ 20-22, 28, 30, 36; *see also* ECF No. 11-3. Additionally, Plaintiff fulfilled its obligations under the contract by tendering full payment under the Agreement. *Id.* at ¶¶ 20-22; *see also id.* at ¶ 8 (stating that "[a]ll conditions precedent to the maintenance of this civil action, if any, have occurred, been performed, or have been waived"). Given these well-pled allegations in the Amended Complaint, Plaintiff's Motion for Final Default Judgment against Koralia for breach of contract (Count I) should be **GRANTED**.[6] *See, e.g., Kabana, Inc. v. DFC*

---

[6] Because Progroup is the corporate entity that entered into the contract with Koralia, for Defendant Azpurua or Defendant Urdaneta to be held individually liable for breach of contract, Plaintiff would have to establish circumstances warranting the piercing of the corporate veil as to these defendants. *See, e.g., Charter Air Ctr., Inc. v. Miller*, 348 So. 2d 614, 616-17 (Fla. Dist. Ct. App. 1977) ("An officer or shareholder of a corporation cannot be held personally liable on a contract unless he signed the contract in his individual capacity or unless the nature of the corporation was such that the corporate entity should be disregarded . . . ."); *NC Interactive, LLC v. Magica Multimedia, Inc.*, No. 22-20334-CIV, 2022 WL 3681997, at *3 (S.D. Fla. Apr. 22, 2022) (concluding that "[t]ypically, Florida law does not hold corporate agents . . . liable for signing contracts on a company's behalf" unless "the nature of the corporation was such that the corporate

*Servs. Corp.*, No. 23-24904-CIV-MARTINEZ/SANCHEZ, 2024 WL 4314773, at *3 (S.D. Fla. Sept. 23, 2024), *report and recommendation adopted*, 2024 WL 4333750 (S.D. Fla. Sept. 27, 2024); *Pharma Funding, LLC v. FLTX Holdings, LLC*, No. 20-21103-CIV, 2021 WL 1166051, at *4 (S.D. Fla. Mar. 8, 2021), *report and recommendation adopted*, 2021 WL 1165420 (S.D. Fla. Mar. 26, 2021).

### B. Conversion (Count II) and Civil Theft (Count IV)

Conversion is "an unauthorized act which deprives another of his identifiable property permanently or for an indefinite time." *Rosenthal Toyota, Inc. v. Thorpe*, 824 F.2d 897, 902 (11th Cir. 1987) (citing *Senfeld v. Bank of N.S. Tr. Co.,* 450 So.2d 1157, 1160-61 (Fla. 3d DCA 1984)).[7] "Under Florida law, the elements of conversion are (1) an act of dominion wrongfully asserted; (2) over another's property; and (3) inconsistent with his ownership therein." *TracFone Wireless, Inc. v. Hernandez*, 196 F. Supp. 3d 1289, 1299 (S.D. Fla. 2016) (quoting *Joe Hand Promotions, Inc. v. Creative Enter., LLC*, 978 F. Supp. 2d 1236, 1241 (M.D. Fla. 2013) (internal quotation omitted)). Similarly, a civil theft claim under Florida law requires a plaintiff to establish that a defendant "(1) knowingly (2) obtained or used, or endeavored to obtain or use, [the plaintiff's] property with (3) 'felonious intent' (4) either temporarily or permanently to (a) deprive [the plaintiff] of its right to or a benefit from the property or (b) appropriate the property to [the

---

entity should be disregarded" (quoting *Charter Air Ctr.*, 348 So. 2d at 616-17)). This issue is addressed *infra* at Section III(D).

[7] Significantly, "[i]in Florida, '[a] mere obligation to pay money may not be enforced by a conversion action.'" *Frayman v. Douglas Elliman Realty*, LLC, 515 F. Supp. 3d 1262, 1285 (S.D. Fla. 2021) (quoting *Belford Trucking Co. v. Zagar*, 243 So. 2d 646, 648 (Fla. 4th DCA 1970)). While money may be the subject of a conversion claim, it must be "specific money capable of identification," that is, "there must be an obligation to keep intact or deliver the specific money in question, so that such money can be identified." *Id.* (quoting *Belford Trucking Co.*, 243 So. 2d at 648). Here, the Amended Complaint has not alleged any facts or circumstances that establish that the $214,797.00 that Plaintiff is owed due to the non-delivery of medical equipment constitutes an identifiable fund of money that may be subject to conversion. *See id.* at 1285-86.

defendant's] own use or to the use of any person not entitled to the property." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1270 (11th Cir. 2009) (citing Fla. Stat. §§ 772.11 and 812.014(1)). Civil theft is essentially a conversion where the accused party acted with criminal intent. *See Gasparini v. Pordomingo*, 972 So. 2d 1053, 1056 (Fla. 3d DCA 2008).

However, because the parties already had a contractual relationship, Plaintiff cannot recover for conversion or civil theft. *See, e.g.*, *Longhi v. AMG Fin. Grp., Inc.*, No. 19-23047-CIV, 2020 WL 7481167, at *3 (S.D. Fla. Jan. 24, 2020) ("Plaintiff cannot recover for conversion or civil theft because there was already a contractual relationship between the parties."), *report and recommendation adopted*, 2020 WL 7481169 (S.D. Fla. Feb. 27, 2020). "Under Florida law, 'a simple debt which can be discharged by the payment of money cannot generally form the basis of a claim for conversion or civil theft.'" *Pharma Funding*, 2021 WL 1166051, at *6 (quoting *Gasparini*, 972 So. 2d at 1055-56). A limited exception to the general rule exists when the defendant's acts are not merely a failure to perform under the contract but instead constitute independent tortious conduct that goes beyond a breach of contract. *See, e.g.*, *Gasparini*, 972 So. 2d at 1055-56; *Pharma Funding*, 2021 WL 1166051, at *6. Florida courts have found that conversion and civil thefts claims constitute more than a breach of contract in two situations: where defendants have stolen or embezzled funds entrusted to them by the plaintiffs for the defendants' own benefit, and where defendants refuse to return funds owned by the plaintiffs and given to the defendants to hold temporarily in a segregated and identifiable account. *Pharma Funding*, 2021 WL 1166051, at *6-7; *Frayman v. Douglas Elliman Realty, LLC*, 515 F. Supp. 3d 1262, 1285-86 (S.D. Fla. 2021); *see also, e.g.*, *Longhi*, 2020 WL 7481167, at *3.

Here, in an apparent attempt to establish the type of independent misconduct sufficient to support a conversion or civil theft tort claim where there is already a valid contract and a breach

of contract claim, Koralia alleges that Progroup took the $214,797.00 portion of the contractual price paid by Koralia and retained it for Progroup's own exclusive economic benefit and to satisfy financial obligations unrelated to the Agreement with Koralia.  *See* ECF No. 11 at ¶ 61.  Koralia, however, never entrusted any funds to Defendants, and it never gave Defendants any funds to hold in a segregated and identifiable account; rather, Koralia just paid Progroup pursuant to the Agreement for the purchase, delivery, and installation of medical equipment.  *See* ECF No. 11 at ¶ 21.  Koralia's conversion and civil theft claims are nothing more than efforts to seek reimbursement of $214,797.00 from Defendants for Progroup's failure to deliver some of the medical equipment that was the subject of the Agreement.  Indeed, Koralia's conversion and civil theft claims are virtually indistinguishable from its breach of contract claim.  Because Koralia has failed to plead conversion (Count II) and civil theft (Count IV) claims that are independent of its contract with Progroup, those claims cannot survive and should be **DENIED**.  *See Longhi*, 2020 WL 7481167, at *4 ("Because there is no allegation that [defendant's] actions were independent from the underlying contractual agreement, Plaintiff's motion for final default judgment on his conversion and civil theft claims should be DENIED.").

### C. Unjust Enrichment (Count III)

"[U]njust enrichment may only be pleaded in the alternative where one of the parties asserts that the contract governing the dispute is invalid."  *Cent. Magnetic Imaging Open MRI of Plantation, Ltd. v. State Farm Mut. Auto. Ins. Co.*, 789 F. Supp. 2d 1311, 1317 (S.D. Fla. 2011).  Because Plaintiff's position here is that there is a valid contract, and because the Amended Complaint establishes both the existence of a contract and Defendant's liability to Plaintiff for breach of contract, Plaintiff's motion for final default judgment on its unjust enrichment claim (Count III) should be **DENIED**.  *See, e.g.*, *Venus Concept v. USA, Inc. v. Johnson*, No. 23-23226-

CIV, 2023 WL 3778245, at *3 (S.D. Fla. Mar. 2, 2023) (holding that because the court was entering final default judgment on claim for breach of contract, entering default judgment on the unjust enrichment claim would be inappropriate); *Zhejiang Dongri Imp. & Exp. Co. v. Neoptx LLC*, No. 20-60114-CIV, 2020 WL 13538687, at *1 n.1 (S.D. Fla. Oct. 15, 2020) (denying as moot unjust enrichment claim when plaintiff also claimed in its motion for default judgment that there was a breach of a valid contract); *Cent. Magnetic Imaging Open MRI*, 789 F. Supp. 2d at 1317 ("A party may only recover under an unjust enrichment theory when there is no valid express or implied-in-fact contract."); *Zarrella v. Pac. Life Ins. Co.*, 755 F. Supp. 2d 1218, 1227 (S.D. Fla. 2010) ("No cause of action in unjust enrichment can exist where the parties' relationship is governed by an express contract.").

D. **Action to Pierce the Corporate Veil (Count V)**

Piercing the corporate veil is not itself an independent cause of action, but rather, a means of imposing liability on an individual for the debts or acts of the corporation. *Belleview Biltmore Partners, LLC v. Noah & Assocs.*, No. 17-20460-CV, 2018 WL 1795480, at *3 (S.D. Fla. Mar. 13, 2018) (citing *Peacock v. Thomas*, 516 U.S. 349, 354 (1996)), *report and recommendation adopted*, 2018 WL 1795438 (S.D. Fla. Apr. 3, 2018). "While Plaintiff may be able to utilize the theory to assert liability against the individuals named in the Complaint, it may not be pled as a distinct cause of action." *Belleview*, 2018 WL 1795480, at *3 (citing *Gumbel v. Scott*, No. 09-60480-CIV, 2010 WL 11505125, at *2 (S.D. Fla. Jan. 6, 2010)). Nonetheless, even though default judgment is not separately available on Count V, the Court may still determine whether the allegations justify piercing the corporate veil with respect to the Count I breach of contract. *Belleview*, 2018 WL 1795480, at *3. When evaluating a claim to pierce the corporate veil, the analysis is conducted under the pleading standards of Federal Rule of Civil Procedure 8(a) rather than under the

heightened pleading standards of Rule 9(b).  *E.g.*, *Zhejiang Dushen Necktie Co., Ltd. v. Blue Med, Inc.*, 16-24679-CIV, 2017 WL 4119604, at *4 (S.D. Fla. Sept. 18, 2017); *Tropical Paradise Resorts, LLC v. JBSHBM, LLC*, 343 F.R.D. 443, 450 (S.D. Fla. 2023).

> Under Florida law, to pierce the corporate veil a party must prove that:
>
> (1) the shareholder dominated and controlled the corporation to such an extent that the corporation's independent existence, was in fact non-existent and the shareholders were in fact alter egos of the corporation;
>
> (2) the corporate form must have been used fraudulently or for an improper purpose; and
>
> (3) the fraudulent or improper use of the corporate form caused injury to the claimant.

*Gasparini*, 972 So. 2d at 1055-56 (quoting *Seminole Boatyard, Inc. v. Christoph,* 715 So. 2d 987, 990 (Fla. 4th DCA 1998)); *see also, e.g.*, *Zhejiang Dushen Necktie Co.*, 2017 WL 4119604, at *5 ("To successfully plead a veil-piercing claim, a party 'must show both a blurring of corporate lines, such as ignoring corporate formalities or using a corporation for the stockholder's personal interest, and that the stockholder used the corporation for some illegal, fraudulent or other unjust purpose.'" (quoting *Century Sr. Servs. v. Consumer Health Ben. Ass'n, Inc.*, 770 F. Supp. 2d 1261, 1265 (S.D. Fla. 2011)).  Improper conduct that supports piercing the corporate veil includes "failing to observe corporate formalities; commingling the funds of the corporations with the funds of other corporations and with [the individual defendant's] own funds; using the assets of the corporations for [the individual defendant's] own personal use; failing to adequately capitalize the corporations; and using the corporate form to avoid liability." *Morris v. Bischoff*, No. 96-1384-CIV-T-17A, 1997 WL 128114, at *8 (M.D. Fla. Mar. 4, 1997).  A corporate veil will not be pierced "unless it [can] be shown that the corporation was organized or used to mislead creditors or to perpetrate a fraud upon them." *Riley v. Fatt*, 47 So. 2d 769, 773 (Fla. 1950).

Here, the Amended Complaint alleges that Progroup was a mere instrumentality or alter

ego of Azpurua, that Azpurua "dominated and controlled the corporation to such an extent that the corporation's independent existence was in fact nonexistent," that Azpurua inadequately capitalized the corporation, that Azpurua used the corporation to mislead or defraud creditors, including by fraudulently misleading Koralia to believe that its payments to Progroup were being remitted to Progroup's suppliers to cover the purchase of medical equipment that Progroup had contracted to supply Koralia, thereby inducing Koralia to continue tendering payments to Progroup, and that Progroup's funds and accounts (which were maintained as individual checking accounts that failed to recognize corporate formalities) were treated as personal assets by the individual Defendants, including through the use of Progroup's funds to pay for Azpurua's separate and unrelated business investments.  ECF No. 11 at ¶¶ 79, 80, 83, 84, 85.  These allegations, which are taken as true, are sufficient to establish that Progroup was Azpurua's alter ego and that Progroup's corporate veil can be pierced to hold Azpurua personally liable for the judgment entered against Progroup.[8]  *See, e.g.*, *Tropical Paradise Resorts, LLC*, 343 F.R.D. at 450-51; *Nationwide Advantage Mortg. Co. v. Fed. Guar. Mortg. Co.*, No. 09-20372-CIV, 2011 WL 13173549, at *3 (S.D. Fla., 2011) (holding that because plaintiff has sufficiently alleged the elements necessary to pierce the corporate veil, the individual defendant could be held liable for the amount due on the judgment against the corporation).  Accordingly, because default judgment against Progroup on Count I should be granted, *see supra* at Section III(A), Plaintiff's motion for final default judgment against Azpurua on the breach of contract claim (Count I) should also be **GRANTED**.

---

[8] Although Plaintiff also mentions Defendant Urdaneta in Count V, the Amended Complaint fails to allege that Urdaneta engaged in acts through which she dominated and controlled Progroup to such an extent that piercing the corporate veil and holding her individually liable for the acts of Progroup is warranted.  Accordingly, the entry of default judgment against Defendant Urdaneta is not warranted.

## IV. RELIEF

Because Plaintiff has established liability, the Court must next address relief. In its motion, Plaintiff seeks damages, interest, attorney's fees, and costs. ECF No. 24 at 8.

### A. **Damages**

"An evidentiary hearing is not necessary where there is sufficient evidence on the record to support the request for damages." *Chanel, Inc. v. Sea Hero*, 234 F. Supp. 3d 1255, 1263 (S.D. Fla. 2016); *see also S.E.C. v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005) ("Rule 55(b)(2) speaks of evidentiary hearings in a permissive tone. We have held that no such hearing is required where all essential evidence is already of record." (citations omitted)).

Here, a hearing is not necessary because Koralia has provided sufficient evidence to support its request for damages. In its motion for default judgment, Koralia requests compensatory damages in the amount of $214,797.00, reflecting the amount that Koralia paid Defendants for medical equipment that Defendants failed to deliver.[9] ECF No. 24 at 2 ¶ 20; *id.* at 8; *see also* ECF No. 11 at ¶ 32. Koralia substantiated this amount with a collection of invoices (ECF No. 11-3) and an affidavit from its chief executive officer, Jose Abreu Santos, asserting that Progroup owes $214,797.00 in actual compensatory damages for undelivered medical equipment. ECF No. 24 at

---

[9] The undersigned recognizes that Plaintiff's motion for default judgment requests that the $214,797.00 in damages be trebled. *See* ECF No. 24 at 2 ¶ 20; *id.* at 8. Treble damages, however, are not available for a breach of contract claim, *see, e.g.*, *Advanced Surgical Techs., Inc. v. Automated Instruments, Inc.*, 777 F.2d 1504, 1506-07 (11th Cir. 1985) (holding that damages should not have been trebled under Florida law for breach of contract); *Rosen v. Marlin*, 486 So. 2d 623, 624-25 (Fla. 3d DCA), *review denied*, 494 So. 2d 1151 (Fla. 1986); *Trend Setter Villas of Deer Creek v. Villas on the Green, Inc.*, 569 So. 2d 766, 767 (Fla. 4th DCA 1990) ("[A] contract claim standing by itself will never support an award of treble damages."), and, as explained above, Plaintiff's Count I claim for breach of contract is the sole claim on which Plaintiff is entitled to default judgment.

7-8. Accordingly, the undersigned finds that Koralia is entitled to $214,797.00 in actual compensatory damages.

**B. <u>Interest</u>**

Koralia also seeks "interest." ECF No. 24 at ¶ 23; *see also* ECF No. 11 at ¶ 37. "Interest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). Postjudgment interest should be awarded at the current legal rate allowed under 28 U.S.C. § 1961 as of the date of entry of the Court's entry of final default judgment until the judgment is satisfied. *Id.*; *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 835 (1990) (holding that "postjudgment interest properly runs from the date of the entry of judgment"); *see also, e.g.*, *Quality Logistics, LLC v. Ivans Multiservices, LLC*, No. 9:23-CV-80784, 2023 U.S. Dist. LEXIS 190030, at *9 (S.D. Fla. Oct. 23, 2023).

Further, "[i]n this diversity jurisdiction case, Plaintiff is entitled to prejudgment interest at the rate provided for by Florida law." *Thomas Cook UK Ltd. v. Maesbury Homes, Inc.*, 280 F.R.D. 649, 652 n.3 (M.D. Fla. 2012) (awarding prejudgment interest pursuant to Florida law upon entering default judgment in plaintiff's favor on its claims for breach of contract, account stated, and open account); *see Walker v. Life Ins. Co. of N. Am.*, 59 F.4th 1176, 1192 (11th Cir. 2023) ("In federal diversity actions, pre-judgment interest is governed by state law . . . ."); *Bosem v. Musa Holdings, Inc.*, 46 So. 3d 42, 46 (Fla. 2010) (explaining that, in contract actions, "once the amount of damages is determined, prejudgment interest is allowed from the date of the loss or the accrual of cause of action" (quoting *Amerace Corp. v. Stallings,* 823 So. 2d 110, 116 (Fla. 2002) (Pariente, J., dissenting)). Given that Koralia made multiple payments to Progroup over a period of approximately one year, and Defendants "repeatedly breached the contract terms by not providing all of the medical equipment ordered and paid for by Koralia, and by consistently and repeatedly

not providing the medical equipment on time," ECF No. 11 at ¶¶ 21-22, if this Report and Recommendation is adopted, Plaintiff should be required to file a supplement detailing the computation of the prejudgment interest being claimed.

C.    **Attorney's Fees and Costs**

Plaintiff also seeks attorney's fees and costs. Under the "American Rule," "[e]ach litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 253 (2010). Here, Koralia has failed to identify any statutory, contractual, or other basis for an award of attorney's fees, and in any event, Koralia fails to explain or substantiate its blanket request for $35,000 in attorney's fees. ECF No. 24 at ¶ 20; *see also id.* at 8. Consequently, Koralia's request for attorney's fees should be **DENIED**.

Turning to Koralia's request for costs, "Federal Rule of Civil Procedure 54(d) provides that the prevailing party is entitled to costs as a matter of course," and "[t]he Eleventh Circuit consistently supports shifting costs if the prevailing party obtains judgment on even a fraction of the claims advanced." *Powell v. Carey Int'l, Inc.*, 548 F. Supp. 2d 1351, 1355 (S.D. Fla. 2008) (citing *Fireman's Fund Ins. Co. v. Tropical Shipping & Const. Co., Ltd.*, 254 F.3d 987, 1012 (11th Cir. 2001)).

Here, assuming this Report and Recommendation is adopted and default judgment is entered in favor of Koralia and against Defendants, Koralia will be the prevailing party in this action, and it will accordingly be entitled to costs. Plaintiff, however, will still have to substantiate and document its costs.

V.    CONCLUSION

For the reasons set forth above, the undersigned **RESPECTFULLY RECOMMENDS** that Plaintiff's Renewed Motion for Entry of a Clerk's Final Default Judgment, ECF No. 24, be **GRANTED IN PART** and **DENIED IN PART** as follows:

15

(1) that final default judgment be entered in favor of the Plaintiff and against Defendants Progroup International Corp. and Alan Azpurua, awarding Plaintiff $214,797.00 in damages, plus interests and costs as set forth above; and

(2) that final default judgment against Defendant Carmen Azpurua be **DENIED** and that the claims against her be **DISMISSED**.

Pursuant to Local Magistrate Rule 4(b), the Court finds good cause to **EXPEDITE** the period to serve and file written objections to this Report and Recommendation. Accordingly, within seven (7) days from the date of this Report and Recommendation, that is, **by September 17, 2025**, the parties shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Jose E. Martinez, United States District Judge. Failing to file timely objections will bar a *de novo* determination by the District Judge of any issue addressed in the Report and Recommendation, will constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions," and will only allow appellate review of the district court order "for plain error if necessary in the interests of justice." 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 146-47, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); *see also Harrigan v. Metro Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020).

**RESPECTFULLY RECOMMENDED** in Chambers in Miami, Florida, this 10th day of September 2025.

_____
EDUARDO I. SANCHEZ
UNITED STATES MAGISTRATE JUDGE

Hon. Jose E. Martinez
Counsel of Record